(39 Misc. Rep. 724.)

PEOPLE ex rel. GARVEY v. DEMOCRATIC GENERAL COMMITTEE OF NEW YORK COUNTY et al.

(Supreme Court, Special Term, New York County. February, 1903.)

1. ELECTIONS—COUNTY EXECUTIVE COMMITTEE.
   The general rules of the county general committee of a political party provided that the executive committee should consist of one member from each assembly district. *Held*, that the general committee could not defeat the right of an assembly district to such membership by declaring the right of delegates of such district to membership to be contested, and then passing, without previous notice, a resolution that one person from each uncontested district shall constitute the executive committee.

2. SAME—AMENDMENT OF RULES—NOTICE.
   Under Primary Election Law (Laws 1899, c. 473) § 9, subd. 2, providing that the rules of the last general committee of a political party shall remain in full force until repealed in accordance with the provisions of the act, an amendment of rules without notice, in violation of such provisions, is void.

Application by the people, on the relation of Peter J. Garvey, for a writ of mandamus against the Democratic general committee of New York county and others. Application granted.

James, Schell & Elkus, for relator.
Steuer, Hoffman & Wahle, for respondents.

LEVENTRITT, J. This is an application for a peremptory writ of mandamus requiring the respondents to recognize the relator as a member of the Democratic general committee, and to recognize as a member of the executive committee the person duly chosen by the petitioner and his fellow members from the Ninth Assembly District.

The relator and 213 others were, at the primary election of 1902, pursuant to the provisions of the primary election law (Laws 1899, c. 473), elected as delegates to or members of the Democratic general committee. They thus became absolutely entitled to their seats on that committee, and possessed of all the rights and privileges of any other member, incapable of being expelled on any pretext whatever. People ex rel. Coffey v. Democratic Committee, 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674. It was conceded on the argument what, under existing law, could not be disputed, that the relator and his associates were members of the general committee, with all the powers pertaining to the office. The contested question was whether the delegates from the Ninth Assembly District were entitled to have one of their number designated as a member of the executive committee. The solution of this question is primarily dependent on the rules and regulations in force at the time the general committee met, on December 30, 1902, for the purpose, among other things, of electing or designating its executive committee. The primary law provides that the rules and regulations adopted by the last preceding general committee shall remain in full force and effect until repealed or amended in accordance with the provisions of the act (section 9, subd. 1). On December 30, 1902, when the first meeting of the general committee, elected that fall, was held, the rules and regulations of the previous year were in force, unrepealed and unamended. Article 5, so far as applicable, provides for:

"An executive committee to consist of one member from each assembly district, with the exception of the Thirty-Fourth District, in which district there shall be one member for that portion of the district lying south of the Harlem river, and one member for that portion of the district lying north of the Harlem river, with the chairman and treasurer of the general committee, the chairman of the committee on finance, the chairman of the committee on printing, the chairman of the committee on resolutions and correspondence, the chairman of the committee on election officers, the chairman of the committee on public meetings, and the committee on law and the committee on municipal affairs as ex officio members.

"No ex officio member of the executive committee other than the chairman and treasurer of the general committee and the chairman of the committee on finance shall be entitled to a vote.

"The member from each assembly district and from the annexed district shall be chosen by the members of the county committee from each assembly district and annexed district, and their names reported at the first meeting of the county committee. In the event of the members from any district being unable to agree upon a member for the executive committee, the presi-

dent shall appoint one of the members of the county committee from such district to act as a member of the executive committee."

Therefore, when the general committee met, the rules and regulations guarantied to the voters of the Ninth Assembly District representation through one of their delegates on the executive committee. It appears as a fact, to be accepted as true on this application, that the delegates from that district had chosen and were prepared to report one of their number as a member of that committee.

As a result of the occurrences of the meeting of December 30th, the Ninth Assembly District was deprived of its representation on the executive committee. The sole question here is whether this was according to the rules and regulations. It is not contended that the procedure followed the rules and regulations of the last preceding general committee, as quoted, but it is claimed that, so far as the designation of the executive committee was concerned, these were superseded. The sole method of accomplishing that is given by subdivision 2 of section 9 of the primary election law, which provides:

"The rules and regulations of parties, and of the conventions and committees thereof, shall not be contrary to, or inconsistent with, the provisions of this act, or of any other law, and shall not be amended except upon reasonable notice."

Without any previous notice, and without being characterized as an amendment to the rules and regulations, there was offered and adopted at the meeting of December 30th a resolution in the following language:

"Resolved, that the districts be called in their order, and that one person from each uncontested district and the annexed district, with the exception of the Thirty-Fourth District, in which district there shall be one person from that portion of the district lying south of the Harlem river, and one person from that portion of the district lying north of the Harlem river, be named to constitute the executive committee for the year 1903."

Immediately prior to the adoption of this resolution a protest had been made against the seating of the delegation from the Ninth District, and their right to membership on the general committee contested. It is perfectly clear from the papers that the resolution was aimed solely at that district. Without attempting, therefore, to pass upon the question whether such a discrimination would in any event be legal, even if accomplished according to the forms of law, it may be said that, extending the principle and the spirit of the Coffey Case to that at bar, such a discrimination would not be countenanced, as in effect being a disfranchisement of the voters of an assembly district acting through their chosen representatives.

Here, however, the forms of law have not been observed. The resolution and the previous rules and regulations are in conflict; and the former was illegal and ineffective because the necessary precedent steps had not been taken. In the absence of any notice, reasonable or otherwise, the rules and regulations could not be amended. It was designed that the primary law "should control not only the choice but the conduct of political committees" (People ex rel. Coffey v. Democratic Committee, 164 N. Y. p. 344, 58 N. E. 127, 51 L. R. A. 674), and its provisions cannot be nullified by the adoption of a resolu-

tion operating by indirection to establish an unauthorized amendment. Terming it a resolution, when, in fact and effect, it was an amendment, does not relieve it of the necessity of having as its support the conditions precedent required by the primary law.

I do not deem it material whether or not the relator voted for this resolution. He asserts that he did not, and no claim is made that he did. It is clear that he voted for no declared amendment of the rules and regulations, and he is therefore entitled to invoke those which were in force at the time his rights were infringed upon.

I allow a peremptory writ of mandamus as a strict legal right. Political committees are under the control and mandate of statutes. They require that in party matters the voters, through their representatives, whether one or two degrees removed, shall express their wishes. If the result is that an undesirable associate is forced on the other members of a committee, or a subcommittee acting for it, the remedy is not in the committee, but in the education of the voters. A principle is involved, and the individual case must not be allowed to sanction a departure bad in precedent, unsound in law, and thoroughly inharmonious with democratic doctrine.

Application granted.